**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL COSTELLO and MEGAN COLONEL, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>TESLA, INC.; TESLA LEASE TRUST; TESLA FINANCE LLC,<br><br>*Defendants.* | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michael Costello and Megan Colonel ("Plaintiffs") bring this class action, individually and on behalf of all persons in the United States who purchased or leased any 2021-2022 Tesla Model 3 or Tesla Model Y and 2021-2022 Tesla Model 3 or Tesla Model Y vehicles equipped with Advanced Driver Assist System ("Autopilot") Phantom Braking Defects (the "Autopilot Braking Defect" or "Phantom Braking Defect") (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively, "Defendants" or "Tesla").

Plaintiffs allege as follows:

## INTRODUCTION

1.       Many automatic driving and safety features found in new cars today are the first steps toward fully autonomous cars. Tesla touts itself as the leader in this field.

2.     Tesla designed, tested, validated, marketed, and sold its advanced driver assistance system ("ADAS"), branded as its "Autopilot" system ("Autopilot") that is featured in every Tesla vehicle, including the "Class Vehicles"[1]. According to Tesla:

> Tesla cars come standard with advanced hardware capable of providing Autopilot features, and full self-driving capabilities—through software updates designed to improve functionality over time… Autopilot advanced safety and convenience features are designed to assist you with the most burdensome parts of driving. Autopilot introduces new features and improves existing functionality to make your Tesla safer and more capable over time. Autopilot enables your car to steer, accelerate and brake automatically within its lane.

3.     Furthermore, Tesla states that "standard safety features will continue to be active on all new cars" including "Automatic Emergency Braking (AEB)" which Tesla describes as "Designed to detect objects that the car may impact and applies the brakes accordingly."[2] (Hereinafter, the "Autopilot AEB", "Autopilot", or "Autopilot System").

4.     The problem at hand is that Tesla is rushing these features to market when the technology is not yet ready and not yet safe. This rush and thus omission of safety is the crux of this case. Tesla's Autopilot and AEB Systems have a defect that causes the Class Vehicles' brakes to falsely engage randomly, unexpectedly, and often with great severity (the "Phantom Braking Defect", "Sudden Unintended Braking Defect", or the "Defect"). The Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, thereby automatically engaging the Class Vehicle's brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop, sometimes in the middle of traffic. Essentially, Tesla vehicles are now slamming on brakes in the middle of traffic due to Autopilot. Simply put, as a result of the Defect, the

---

[1] The Class Vehicles include, but are not necessarily limited to, the 2021 and 2022 Model Year Tesla Model 3 & Tesla Model Y.
[2] Autopilot, TESLA, https://www.tesla.com/autopilot (last visited Jan 7, 2023).

Autopilot and AEB systems at issue here are now a safety hazard rather than a beneficial safety feature.

5.      Many Tesla owners have reported significant and unexpected slow-downs or stops due to the improper engagement of their Class Vehicle's braking systems. When the Sudden Unintended Braking Defect Occurs, the braking turns what is supposed to be a safety feature into a frightening and dangerous nightmare for everyone in the Class Vehicle's proximity.

6.      The National Highway Traffic Safety Administration ("NHTSA") has received hundreds of individual complaints in the last three years from drivers of Tesla vehicles.

7.      The Sudden Unintended Braking Defect is substantially likely to materialize during the useful life of the Class Vehicles. Named Plaintiffs have experienced the Sudden Unintended Braking Defect, and numerous Class Vehicle drivers have publicly complained about the problem to NHTSA and on various internet forums.

8.      Making matters worse, Tesla has known about its malfunctioning Autopilot and AEB systems for years but has remained silent about the malfunctions. Disclosing the Sudden Unintended Braking Defect would likely: (1) put Tesla at a competitive disadvantage both in safety ratings and in the race to get autonomous safety features on the market; (2) have a negative impact on Tesla's brand; and (3) reduce profits from sales. Instead, Tesla markets its vehicles as safe, despite its copious knowledge that the vehicles are defective and unfit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Tesla has actively concealed the true nature and extent of the Sudden Unintended Braking Defect from Plaintiffs and the other Class members and has failed to disclose it to them at the time of purchase or lease or thereafter.

9.     Had Plaintiffs and other Class members known about the Sudden Unintended Braking Defect, they would not have purchased and/or leased the Class Vehicles on the same terms or would have paid significantly less for them. As a result of Plaintiffs' reliance on partial representations and/or omissions by Tesla, Plaintiffs and the other Class members have suffered financial loss and/or loss in value of their Class Vehicles.

10.     Tesla knew about the existence of the Sudden Unintended Braking Defect from, among other things, pre-production testing, consumer complaints, warranty data, dealership repair orders, and NHTSA investigations.

11.     Despite Tesla's knowledge of the Sudden Unintended Braking Defect, Tesla has not recalled the Class Vehicles to repair the Defect, has not offered Plaintiffs and the other Class members a suitable repair or replacement free of charge, and has not offered to reimburse Plaintiffs and the other Class members for the value consumers paid for the Autopilot AEB features in the first place.

12.     Tesla has refused to repair or replace the Class Vehicles even though the Class Vehicles are under a comprehensive warranty, as explained in detail below.

13.     Thus, Tesla has wrongfully and intentionally transferred the cost of repair of the Sudden Unintended Braking Defect to Plaintiffs and the other members of the Class by fraudulently concealing the Defect's existence.

14.     Under the warranties provided to Plaintiffs and the other members of the Classes, Tesla promised to repair or replace defective Autopilot AEB system components arising out of defects in materials and/or workmanship, such as the Sudden Unintended Braking Defect, at no cost to owners or lessors of the Class Vehicles. Tesla offers a Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts

4

manufactured or supplied by Tesla under normal use for a period of 4 years of 50,000 miles (80,000 km), whichever comes first."[3]

15.     Tesla breached its express and implied warranties in which it promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including in the Autopilot AEB systems. Because the Sudden Unintended Braking Defect was present at the time of sale or lease of the Class Vehicles, Tesla is required to repair or replace the Class Vehicles pursuant to the terms of the warranty. Instead, Tesla has wrongfully shifted the financial detriment of the Defects to Plaintiffs and the other Class members. These costs are significant, and no reasonable consumer expects to incur such costs.

16.     Tesla possesses exclusive and superior knowledge and information regarding the Sudden Unintended Braking Defect. Despite this, Tesla has failed to notify Plaintiffs and the other Class members of the Defect, who could not have reasonably discovered the Defect through due diligence. Similarly, Tesla has failed to provide Plaintiffs and the other Class members with any repair or remedy for the Defect, despite a superfluous number of customer complaints.

17.     While promoting the standard, quality, and/or grade of the Class Vehicles, Tesla knowingly concealed/omitted, and still actively conceals, the existence of the Defect at the time of purchase or lease or otherwise to increase its profits and decrease its costs (by selling additional Class Vehicles and transferring the cost of the repair of the Defect, or replacement of the vehicle, to Plaintiffs and the other Class members).

---

[3] Tesla, New Vehicle Limited Warranty Booklet https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Jan 7, 2023).

18.     At all times relevant, Tesla knowingly omitted, concealed, and suppressed material facts regarding the Sudden Unintended Braking Defect, and misrepresented the standard, quality, or grade of the Class Vehicles which directly caused harm to Plaintiffs and the other members of the Class. As a direct result of Tesla's wrongful conduct, Plaintiffs and the other members of the Class have suffered damages, including, inter alia: (1) out-of-pocket expenses for repair of the Defect; (2) costs for future repairs or replacements; (3) sale of their vehicles at a loss; (4) diminished value of their vehicles; and/or (5) the price premium attributable to the Autopilot feature.

19.     Plaintiffs and the other Class members therefore assert claims against Tesla for fraud, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, violation of statutory deceptive trade practices laws of North Carolina, and unjust enrichment. As alleged herein, Tesla's wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiffs and the other members of the Class are entitled to damages and injunctive and declaratory relief.

## THE PARTIES

Plaintiffs Michael Costello and Megan Colonel

20.     Plaintiff Costello is a Wake County, North Carolina resident. Plaintiff Colonel is a Durham County, North Carolina Resident.

21.     Plaintiffs Costello and Colonel both purchased a Class Vehicle.

22.     Plaintiff Costello purchased his Tesla Model 3 primarily for personal, family, or household use. Plaintiff Colonel purchased her Tesla Model Y for personal, family, or household use.

23.     Passenger safety and reliability were important factors in Plaintiffs' decision to purchase their vehicles. Before making their respective purchases, Plaintiffs Costello and Colonel researched the Tesla Model 3 and Model Y by viewing the vehicle's window sticker(s), and inquiring into the vehicle's safety and reliability, and even consulting Tesla's website, which informed Plaintiffs the vehicle was indeed safe and reliable. Plaintiff Costello and Plaintiff Colonel both believed that the Class Vehicles would be a safe and reliable vehicle for all intended uses.

24.     Prior to purchasing their Class Vehicle, Plaintiffs reviewed Tesla's promotional materials, such as Tesla's website, Tesla's YouTube content, and the Monroney sticker, and interacted with at least one sales representative. None of these sources disclosed the Sudden Unintended Braking Defect.

25.     Through their exposure and interaction with Tesla, Plaintiffs were aware of Tesla's uniform and pervasive marketing message of dependability and safety, which is a primary reason they purchased the Class Vehicles. However, despite touting the safety and dependability of the Class Vehicles and Autopilot system, Tesla refused to disclose the Sudden Unintended Braking Defect to Plaintiffs.

26.     Plaintiff Costello and Plaintiff Colonel have both experienced the Sudden Unintended Braking Defect on several occasions since they started driving their respective Class Vehicles. Plaintiff Colonel was even stranded on the roadside due to the Sudden Unintended Braking Defect.

27.     Neither Plaintiff Costello nor Plaintiff Colonel received the benefit of their bargain. Both Plaintiffs purchased a vehicle of lesser standard, grade, and quality than represented, and did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and

reliable operation. The Sudden Unintended Braking Defect has significantly diminished the value of Plaintiffs' Class Vehicles.

28.     Had Tesla disclosed the Sudden Unintended Braking Defect, neither Plaintiff would have purchased their Class Vehicle, or certainly would have paid less to do so.

Defendant Tesla

29.     Defendant Tesla, Inc. is a Delaware corporation with its Corporate Headquarters located at 1 Tesla Road, Austin, Texas 78725. Tesla, Inc. designs and manufactures motor vehicles, parts, and all sorts of other products for sale in the United States and throughout the world. Tesla, Inc. is the warrantor and distributor of the Class Vehicles throughout the United States.

30.     Defendant Tesla Lease Trust is a Delaware statutory trust, and its initial beneficiary is Tesla Finance, LLC.  Tesla Lease Trust is the title holder to the Tesla vehicles that are leased under a leasing program managed by Tesla Finance LLC.  Tesla Lease Trust has its principal place of business in Palo Alto, California.

31.     Defendant Tesla Finance LLC is wholly owned subsidiary of Tesla, Inc., and is the beneficial owner of the leasing assets held in Trust by Tesla Lease Trust and, as an agent of the Tesla Lease Trust, originates, services, administers, and collects leases for Tesla Lease Trust. Tesla Finance LLC is incorporated in Delaware and has its principal place of business in Palo Alto, California.

30.     At all relevant times, Tesla was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Delaware and throughout the United States of America.

31.     In order to sell vehicles to the public, Tesla sells vehicles directly to consumers such as Plaintiffs, often through Tesla's website. Per the agreements between Tesla and the consumers, such as Plaintiffs, consumers can receive services under Tesla's issued warranties at service locations that are convenient to them.

32.     Tesla also develops and disseminates the owners' manuals, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles. Tesla is also responsible for the production and content of the information on the Moroney Stickers.

33.     Tesla is the drafter of the warranties it provides to consumers nationwide, the terms of which unreasonably favor Tesla. Consumers are not given a meaningful choice in the terms of the warranties provided by Tesla, and those warranties are offered on a "take it or leave it" style basis.

## JURISDICTION AND VENUE

34.     This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than Tesla, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).  Additionally, greater than two-thirds of the members of the Class reside in states other than the states in which Tesla is a citizen.

35.     In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.

36.     This Court has specific jurisdiction over Tesla because Tesla has minimum contacts within this District in that Defendants marketed, advertised, and sold vehicles within this District and Plaintiff's claims arise out of Defendant's actions within this District. Plaintiffs both purchased their vehicles in this District. Further, products, materials, or things processed, serviced, or manufactured by Tesla anywhere were used or consumed in this state in the ordinary course of business, commerce, trade, or use. Tesla has, at all relevant times, conducted and continues to conduct business all over the country, including in North Carolina.

37.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

38.     For years, Tesla has designed, manufactured, distributed, sold, leased, and warranted the Class Vehicles.[4]

39.     Tesla marketed and sold thousands of Class Vehicles nationwide. Plaintiffs' and Class Members' purchase of Class Vehicles accrues to the benefit of Tesla by increasing its revenues. In 2021, Tesla reported its revenues as $53.8 billion.[5]

40.     Tesla provides several warranties when consumers purchase Tesla-branded vehicles, including a Basic warranty, "Basic Vehicle Limited Warranty covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of 4 years or 50,000

---

[4] Tesla, Inc., ENCYCLOPÆDIA BRITANNICA, https://www.britannica.com/topic/Tesla-Motors (last visited Jan 7, 2023).

[5] Tesla Revenue 2010-2022: Tsla, MACROTRENDS, https://www.macrotrends.net/stocks/charts/TSLA/tesla/revenue (last visited Jan 7, 2023).

miles (80,000 km), whichever comes first.". Tesla also offers a warranty on the Battery and drive unit, stating:

> "• Model S and Model X - 8 years (with the exception of the original 60 kWh battery manufactured before 2015 that is covered for a period of 8 years or 125,000 miles/200,000 km, whichever comes first).
>
> • Model 3 with Standard or Mid-Range Battery - 8 years or 100,000 miles (160,000 km), whichever comes first, with minimum 70% retention of Battery capacity* over the warranty period."

Both of these warranties are part of the New Vehicle Limited Warranty ("NVLW") provided by Tesla to purchasers of new Tesla-branded vehicles. These warranties are transferrable to subsequent owners, within the stated durational or mileage limits of the warranties.[6]

41.     As Tesla states on its website, "Tesla cars come standard with advanced hardware capable of providing Autopilot features, and full self-driving capabilities—through software updates designed to improve functionality over time.".[7]

42.     Tesla's Autopilot system utilizes a camera system to monitor the vehicle and surrounding objects.

43.     Tesla advertises its Autopilot system as including "Standard Safety Features" including "Automatic Emergency Braking" ("AEB"), which is "Designed to detect objects that the car may impact and applies the brakes accordingly.".[8]

---

[6] Tesla, New Vehicle Limited Warranty Booklet
https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Jan 7, 2023).

[7] Autopilot, TESLA, https://www.tesla.com/autopilot (last visited Jan 7, 2023).

[8] *Id.*

44. However, the Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, triggering a braking response and causing the Class Vehicles to abruptly decelerate or stop completely, despite no need for this action. The Defect presents a safety hazard that distracts the Class members and renders the Class Vehicles unreasonably dangerous to consumers because it severely impacts a driver's ability to control vehicle speed as expected under normal driving conditions and maintain an appropriate speed based on traffic flow, thereby increasing the risk of a rear-end collision. All Class Vehicles use the same Autopilot system. Sudden Unintended Braking Defect affects all Class Vehicles. The AEB system at issue here is part of Tesla's advanced driver-assistance system ("ADAS"). Other car manufacturers have similar ADAS systems in their own vehicles. However, Tesla's ADAS system stands out in the crowd because Tesla makes up for nearly 70 percent of U.S. ADAS-related crashes.[9]

45. The first-ever mandated release of ADAS crash data took place in June 2022, revealing that 273 crashes involving ADAS have been linked to Tesla since July 2021. Apart from Honda, who reported 90 crashes, no other automaker reported more than ten ADAS crashes during the one-year period. At around the same time that the data was released, the National Highway Traffic Safety Administration stepped up an existing probe into Tesla's Sudden Unintended Braking Defect.[10]

**The Autopilot and Defect**

---

[9] Ians, NEARLY 70% OF CAR CRASHES LINKED TO 'SELF-DRIVING' IN US WERE TESLA: REPORT BUSINESS STANDARD NEWS (2022), https://www.business-standard.com/article/international/nearly-70-of-car-crashes-linked-to-selfdriving-in-us-were-tesla-report-122061600216_1.html (last visited Jan 7, 2023).

[10] David Shepardson, TESLA LEADS IN DRIVER-ASSISTED TECHNOLOGY CRASHES -U.S. DATA REUTERS (2022), https://www.reuters.com/business/autos-transportation/tesla-honda-among-those-report-advanced-driving-systems-vehicle-crashes-us-2022-06-15/ (last visited Jan 7, 2023).

46.     Tesla knew about the problem of false activations in its Autopilot AEB systems for years. Notably, Tesla knew about the Sudden Braking defect even before putting the Class Vehicles on the market. Tesla became aware of the Sudden Unintended Braking Defect through sources not available to Plaintiffs and the other members of the Classes, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Tesla, aggregate warranty data compiled by Tesla, testing conducted by Tesla in response to consumer complaints, and/or repair order and parts data received by Tesla.

47.     Tesla and other members of the automotive industry knew that, as a new and not fully developed technology, automatic braking and self-driving systems like the Autopilot system were prone to false braking activations. Tesla manufactured and sold Class Vehicles equipped with this technology anyway.

48.     As further evidence of Tesla's pre-sale knowledge, the owner's manuals for the Class Vehicles alluded to the risk of false activations by stating "Several factors can affect the performance of Automatic Emergency Braking, causing either no braking or inappropriate or untimely braking, such as when a vehicle is partially in the path of travel or there is road debris. It is the driver's responsibility to drive safely and remain in control of the vehicle at all times. Never depend on Automatic Emergency Braking to avoid or reduce the impact of a collision."[11]

49.     This warning about the Autopilot AEB system was buried in small text in the middle of owner's manuals, which are several hundred pages long. Notwithstanding the Autopilot AEB system being touted as a safety feature, Tesla never referenced or otherwise directed potential

---

[11] Model Y owner's Manual, TESLA, https://www.tesla.com/ownersmanual/modely/en_us/ (last visited Jan 7, 2023).

purchasers to this hidden disclaimer. As such, class members would only see this disclosure, if at all, after they purchased or leased the vehicles and if they happened to fortuitously stumble upon it when reading the owner's manual. Even then, however, the disclosure is too vague, cursory, and non-specific to adequately warn anyone about the true scope and extent of the dangers of the Sudden Unintended Braking Defect.

50.     Tesla also began receiving an unusually large number of complaints about false activations almost immediately after the earliest Class Vehicles were put on the market in 2021. Tesla nonetheless continued to sell the Class Vehicles.[12]

51.     Tesla had and continues to have a duty to fully disclose the true nature of the Sudden Unintended Braking Defect to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Tesla had and has exclusive knowledge or access to material facts about the Class Vehicles' Autopilot AEB systems that were and are not known to or reasonably discoverable by Plaintiffs and the other members of the Classes; and because Tesla has actively concealed the Defect from its customers at the time of purchase or repair and thereafter.

52.     Specifically, Tesla: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their Autopilot AEB systems were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact that the Class Vehicles and their Autopilot AEB systems were

---

[12] TESLA FACES INCREASE IN COMPLAINTS OVER 'PHANTOM BRAKING' BLOOMBERG.COM (2022), https://www.bloomberg.com/news/articles/2022-06-03/tesla-faces-big-increase-in-complaints-over-phantom-braking (last visited Jan 7, 2023).

defective, despite the fact that Tesla learned of the Defect before it placed the Class Vehicles in the stream of commerce.

53.     In May 2021, Tesla chief executive Elon Musk said planned modifications to the automated driving system would address "phantom braking," which some Tesla drivers have long complained about.[13]

54.     For example, one 2021 Tesla Model Y owner told the National Highway Traffic Safety Administration ("NHTSA") in October that "the car braked hard and decelerated from 80 mph to 69 mph in less than a second. The braking was so violent, my head snapped forward and I almost lost control of the car," according to Reuters.[14]

55.     Between May 2021 and February 2022, the NHTSA "received 354 complaints alleging unexpected brake activation in 2021-2022 Tesla Model 3 and Model Y vehicles."[15]

56.     As a result of these complaints, in February of 2022, the NHTSA opened an "Preliminary Evaluation" into more than an estimated 416,000 2021 and 2022 model year Tesla Model 3 and Model Y electric vehicles to investigate potential problems with the Vehicle's automated emergency braking (AEB) systems.[16] AEB systems obviously need to be able to brake

---

[13] Person & David Shepardson, U.S. NHTSA ASKS TESLA TO RESPOND BY JUNE 20 IN BRAKE ACTIVATION PROBE REUTERS (2022), https://www.reuters.com/business/autos-transportation/us-nhtsa-asks-tesla-respond-by-june-20-brake-activation-probe-2022-06-03/ (last visited Jan 7, 2023).

[14] *Id.*

[15] Dot NHTSA ODI document - National Highway Traffic Safety Administration, , https://static.nhtsa.gov/odi/inv/2022/INOA-PE22002-4385.PDF (last visited Jan 7, 2023).

[16] *Id.*; see also Sebastian Blanco, NHTSA WANTS TESLA TO HAND OVER MORE INFORMATION ABOUT PHANTOM BRAKING CAR AND DRIVER (2022), https://www.caranddriver.com/news/a40221055/nhtsa-tesla-information-phantombraking/ (last visited Jan 7, 2023).

hard when there's a dangerous situation in the road, but more than 350 Tesla drivers reported to the NHTSA that their cars sometimes saw rapid deceleration "without warning, at random, and often repeatedly in a single drive cycle" when there were no obstacles in the road warranting such braking.

57.     In early May of 2022, the NHTSA sent Tesla a letter saying that over 750 Tesla owners had complained about the Sudden Unintended Braking Defect and asked the company to answer detailed questions about these incidents. NHTSA is requiring Tesla to submit a database that includes details on each of the 758 incidents, including when the cars were built, when they had their software updated, and information on any consumer complaints, crashes or lawsuits relating to these vehicles, among dozens of other bits of information.[17]

58.     In June of 2022, the NHTSA upgraded its investigation assessing 830,000 Tesla vehicles for phantom braking problems to an "engineering analysis." This is the second, and final step taken before a recall is issued.[18]

59.     Federal law requires automakers like Tesla to notify (and update) the National Highway Traffic Safety Administration of potential defects. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Tesla should (and does) monitor the NHTSA database to track reports of defective Autopilot AEB systems. From this source, Tesla knew that the Class Vehicles were experiencing unusually high levels of false engagements causing abrupt slow-downs or stops or deactivations.

---

[17] Sebastian Blanco, NHTSA WANTS TESLA TO HAND OVER MORE INFORMATION ABOUT PHANTOM BRAKING CAR AND DRIVER (2022), https://www.caranddriver.com/news/a40221055/nhtsa-tesla-information-phantom-braking/ (last visited Jan 7, 2023).

60.     The following example complaints filed by consumers with NHTSA and posted on the Internet demonstrate that the Sudden Unintended Braking Defect is a widespread safety hazard that continues to plague the Class Vehicles. The complaints below are examples only, and do not represent the universe of complaints that Tesla received. The number of complaints that Tesla received was unusually high, which put Tesla on further notice of the Defect.

61.     In short, Tesla knew the Sudden Unintended Braking Defect was present in all Class Vehicles equipped with the Autopilot AEB system, as demonstrated above, but it failed to remedy the Defect. Tesla's halfhearted and unconscionable acts deprived and continue to deprive Plaintiffs and Class members of the benefit of their bargain. Had Plaintiffs and Class members known about the Defect, they would not have purchased their Class Vehicles, or certainly would have paid less to do so.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

63.     The Classes are defined as: Nationwide Class: "All persons or entities in the United States that purchased, lease, leased, own or owned a Tesla Vehicle that suffers from the Sudden Unintended Braking Defect" (the "Class").

64.     Additionally, Plaintiffs also seek to represent a North Carolina subclass defined as: "All persons or entities in North Carolina that purchased, lease, leased, own or owned a Tesla Vehicle that suffers from the Sudden Unintended Braking Defect" (the "North Carolina Subclass").

65.     Excluded from the Class and subclass are: (1) Tesla, any entity or division in which Tesla has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

66.     Numerosity. The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of individuals that are members of the proposed Class and Subclass. Although the precise number of proposed members is unknown to Plaintiffs, the true number of members of each of the Class and Subclass is known by Tesla. More specifically, Tesla maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, members of the proposed Class and Subclass may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

67.     Typicality. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all other members of the Class and Subclass, paid for Class Vehicles designed, manufactured, and distributed by Tesla which are afflicted by the Defect. The representative Plaintiffs, like all other members of the Class and Subclass, have been damaged by Tesla's misconduct in that he has incurred or will incur the cost of repairing or replacing this malfunctioning Autopilot AEB system and related parts as a result of the Defect.

Further, the factual bases of Tesla's misconduct are common to all members of the Class and Subclass and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Class and Subclass.

68. Commonality: Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members of the Class and Subclass. These common legal and factual questions include, but are not limited to, the following:

a) Whether the Class Vehicles suffer from the Defect;

b) Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

c) Whether the Defect constitutes an unreasonable safety hazard;

d) Whether Tesla knew or should have known about the Defect and, if so, how long Tesla has known of the Defect;

e) Whether Tesla had a duty to disclose that the Class Vehicles suffer from the Defect;

f) Whether Tesla breached its duty to disclose that the Class Vehicles suffer from the Defect;

g) Whether Tesla intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the Defect;

h) Whether Tesla negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the Defect;

i) Whether Tesla made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Defect;

j) Whether members of the Classes would have paid less for the Class Vehicles if Tesla, at the time of purchase or lease, disclosed that the vehicles suffered from the Defect;

k) Whether Tesla is liable to Plaintiffs and the Classes for breaching its express and/or implied warranties;

l) Whether Tesla is liable to Plaintiffs and the Classes for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. and/or any other statutory duties under state laws;

m) Whether Tesla violated applicable state consumer protection statutes;

n) Whether Tesla has been unjustly enriched; and

o) Whether Plaintiffs and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief

69.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and they intend to prosecute this action vigorously.

70.    Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Tesla's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Tesla's misconduct. Absent a class action, Class Members will continue to incur damages, and Tesla's misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to

multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Fraud by Omission**
**(On behalf of Plaintiffs and the Proposed Classes)**

71.     Plaintiffs incorporate and reallege each of the preceding paragraphs as though fully set forth herein.

72.     Plaintiffs bring this count on behalf of themselves and the other Class members.

73.     Tesla intentionally and knowingly falsely concealed, suppressed, and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Autopilot AEB system in the Class Vehicles is defective, exposing drivers, occupants, and members of the public to safety risks with the intent that Plaintiffs and the other members of the Classes rely on Tesla's omissions. As a direct result of Tesla's fraudulent conduct, Plaintiffs and the other members of the Classes have suffered actual damages.

74.     As a result of Tesla's failure to disclose to Plaintiffs and the other members of the Classes the material fact that the Autopilot system in the Class Vehicles is defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Autopilot Defect or sell their vehicles at a substantial loss. The fact that the Autopilot system in the Class Vehicles is defective is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair, or replacement of the Defect, and because Plaintiffs and the other members of the Classes had a reasonable expectation that the vehicles would not suffer from the Defect.

75.     The fact that the Autopilot system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. Because of the Defect, the Class Vehicles may suddenly brake automatically while driving in traffic. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents caused by the Defect, and the general public is also at risk for being involved in an accident with a Class Vehicle. Plaintiffs and the other members of the Classes would not have purchased the Class Vehicles but for Tesla's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have paid less for the Class Vehicles.

76.     Tesla knew its concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Tesla knew its concealment and suppression of the Defect would sell more Class Vehicles.

77.     Despite notice of the Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Tesla has not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class members the costs they incurred relating to diagnosing and repairing the Defect or for the premium price that they paid for the Autopilot system and its AEB feature.

78.     At minimum, Tesla knew about the Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above. As such, Tesla acted with malice, oppression, and fraud. Plaintiff and the other members of the Classes reasonably relied upon Tesla's knowing, affirmative and active false representations, concealment, and omissions. As a direct and proximate result of Tesla's false representations, omissions, and

active concealment of material facts regarding the Defect, Plaintiffs and the other members of the Classes have suffered actual damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Proposed Classes)**

79.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

80.     Plaintiffs bring this count on behalf of themselves and the other Class members.

81.     Tesla marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and the other Class members' decisions to purchase or lease the Class Vehicles.

82.     Tesla is and was at all relevant times a merchant and seller of motor vehicles as defined under the Uniform Commercial Code.

83.      With respect to leases, Tesla is and was at all relevant times a lessor of motor vehicles as defined under the Uniform Commercial Code.

84.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

85.     In connection with the purchase or lease of each of the Class Vehicles, Tesla provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Tesla offers a 4-year or 50,000-mile Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use."[19]  Under warranties provided to Plaintiffs and the other members of the Classes, Tesla promised to repair or replace defective components

---

[19] Tesla, New Vehicle Limited Warranty Booklet https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Jan 7, 2023).

arising out of defects in materials and/or workmanship, such as the Defect, at no cost to owners or lessors of the Class Vehicles.

86.     Tesla's warranties formed a basis of the bargain that was reached when Plaintiffs and the other members of the Classes purchased or leased their Class Vehicles.

87.     Despite the existence of the warranties, Tesla failed to inform Plaintiffs and the other members of the Classes that the Class Vehicles contained the Defect, and, thus, wrongfully transferred the costs of repair or replacement of the Defect to Plaintiff and the other members of the Classes.

88.     Tesla has failed to provide Plaintiffs or the other members of the Classes with a meaningful remedy for the Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

89.     Tesla was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of written warranties. Any additional time to do so would be unnecessary and futile because Tesla has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Defect free of charge despite the Defect's existence at the time of sale or lease of the Class Vehicles.

90.     As a direct and proximate result of Tesla's breach of express warranties, Plaintiffs and the other members of the Classes have been damaged in an amount to be determined at trial.

91.      Finally, because of Tesla's breach of express warranty as set forth herein, Plaintiff and the other members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other members of the

Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty**
**(On behalf of Plaintiff and the Proposed Classes)**

92.     Plaintiffs incorporate and reallege each of the preceding paragraphs as though fully set forth herein.

93.     Plaintiffs bring this count on behalf of themselves and the other members of the Classes.

94.     Plaintiffs and the other members of the Classes purchased or leased the Class Vehicles from Tesla, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Tesla was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Tesla knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

95.     Tesla is and was at all relevant times a merchant and seller of motor vehicles as defined under the Uniform Commercial Code.

96.     With respect to leases, Tesla is and was at all relevant times a lessor of motor vehicles as defined under the Uniform Commercial Code.

97.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

98.     Tesla impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

99.     The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable

transportation. The Class Vehicles contain the Defect and present an undisclosed safety risk to drivers and occupants. Thus, Tesla breached its implied warranty of merchantability.

100.    Tesla was provided extensive pre-suit notice of the Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Tesla has known of and concealed the Defect and, on information and belief, has refused to repair or replace the Autopilot Defect free of charge despite the Autopilot Defect's existence at the time of sale or lease of the Class Vehicles.

101.    As a direct and proximate result of Tesla's breach of the implied warranty of merchantability, Plaintiffs and the other members of the Classes have been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**Breach of Written Warranty under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2303 et seq.**
**(On Behalf of the Proposed Classes)**

102.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

103.    Plaintiffs bring this count on behalf of themselves and the other members of the Classes.

104.    Plaintiffs satisfy the MMWA jurisdictional requirement because they both allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

105.    Plaintiffs and the other members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

106.    Tesla is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

107. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

108. The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

109. Tesla provided Plaintiffs and the other members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, Tesla offers a 4-year or 50,000-mile Basic Warranty that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use."[20]

110. Under warranties provided to Plaintiffs and the other members of the Classes, Tesla promised to repair or replace defective AEB components arising out of defects in materials and/or workmanship, such as the Defect, at no cost to owners or lessors of the Class Vehicles. However, Tesla has failed to provide owners with a remedy to the Defect.

111. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

112. Tesla breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship. The Class Vehicles are not of the standard, quality, or grade that Tesla represented at the time of purchase or lease and contain the Defect.

113. Plaintiffs and the other members of the Classes have had sufficient direct dealings with Tesla or its agents to establish privity of contract between Tesla, on the one hand, and Plaintiffs and the other members of the Classes, on the other hand.

---

[20] Tesla, New Vehicle Limited Warranty Booklet https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Jan 7, 2023).

114.    Affording Tesla a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Tesla knew of the material misrepresentations and omissions concerning the standard, quality, or grade of the Class Vehicles and the existence of the Defect, but failed to remediate the same. Likewise, Tesla failed to disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Tesla a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

115.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2303 et seq.**
**(On Behalf of Plaintiffs and the Proposed Classes)**

116.    Plaintiffs repeat and re-allege each preceding paragraph as though fully set forth herein.

117.    Plaintiffs bring this cause of action on behalf of themselves and the Proposed Classes.

118.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

119.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

120.     Tesla is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

121.     Tesla impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Phantom Braking Defects that were manufactured, supplied, distributed, and/or sold by Tesla would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Phantom Braking Defects would be fit for their intended use while the Class Vehicles were being operated.

122.     Contrary to the applicable implied warranties, the Class Vehicles and their Phantom Braking Defect at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles – their Phantom Braking Defects – are defective. Accordingly, the Class Vehicles are not fit for their intended use.

123.     Tesla's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

124.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs) computed based on all claims to be determined in this suit.

125.     Plaintiffs and the Classes were not required to notify Tesla of the breach or were excused from doing so because affording Tesla a reasonable opportunity to cure its breach have been futile.

126.     Tesla also had notice of the issues complained of herein by the presentation of Plaintiffs' Class Vehicles to authorized Tesla dealers for repair of the Phantom Braking Defect, numerous complaints made directly to Tesla and online, and from internal sources.[21]

127.     Tesla has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the Phantom Braking Defect.

128.     As a direct and proximate cause of Tesla's breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. Tesla's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

129.     As a result of Tesla's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment or Restitution**
**(On behalf of Plaintiffs and the Proposed Classes)**

130.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

131.     Plaintiffs bring this count on behalf of themselves and the other members of the Classes. To the extent required by law, Plaintiffs allege this cause of action in the alternative, as permitted by Fed. R. Civ. P. 8.

---

[21] Sebastian Blanco, TESLA INVESTIGATED OVER PHANTOM BRAKING-416,000 CARS INVOLVED CAR AND DRIVER (2022), https://www.caranddriver.com/news/a39145925/tesla-phantom-breaking-nhtsa-investigation/ (last visited Jan 7, 2023).

132.    Plaintiffs and the other members of the Classes conferred a benefit on Tesla by leasing or purchasing the Class Vehicles. Tesla was and should have been reasonably expected to provide Class Vehicles free from the Defect.

133.    Tesla unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its false representations, omissions, and concealment of the Defect in the Class Vehicles.

134.    As a proximate result of Tesla's false representations, omissions, and concealment of the Defect in the Class Vehicles, and as a result of Tesla's ill-gotten gains, benefits and profits, Tesla has been unjustly enriched at the expense of Plaintiffs and the other members of the Classes. It would be inequitable for Tesla to retain its ill-gotten profits without paying the value thereof to Plaintiffs and the other members of the Classes.

135.    There is a direct relationship between Tesla on the one hand, and Plaintiffs and the other class members on the other, sufficient to support a claim for unjust enrichment. Tesla failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales. Conversely, Tesla knew that disclosure of the Defect would sales and leasing of the Class Vehicles and would negatively impact the reputation of Tesla's brand among Plaintiffs and the other Class members. Tesla also knew its concealment and suppression of the Defect would discourage Plaintiffs and the other Class members from seeking replacement or repair concerning the Defect, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

136.    Plaintiffs and the other members of the Classes are entitled to restitution of the amount of Tesla's ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust. and inequitable conduct.

137.    Plaintiffs and members of the putative class have been injured as a direct and proximate result of Tesla's inequitable conduct. Plaintiffs and members of the putative classes lack an adequate remedy at law with respect to this claim and are entitled to non-restitutory disgorgement of the financial profits that Tesla obtained as a result of its unjust conduct.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty**
**N.C.G.S. § 25-2-313**
**(On behalf of Plaintiffs and the North Carolina Sub-Class)**

138.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

139.    In connection with the purchase, Tesla expressly warranted that, inter alia:

a. The consumer's warranty would be held available on an ongoing bases without limitation.

b. The Class Vehicles' applicable warranty would be made available to Plaintiffs via Tesla's Online Portal and upon request;

c. The Class Vehicles were fit for the ordinary purposes of safe, reliable, and attractive transportation;

d. The Class Vehicles were of good, sound, and merchantable quality;

e. The Vehicle was free from defective parts and workmanship;

f. The Vehicle was so engineered and designed as to function without requiring unreasonable maintenance and repairs;

g. In the event that the Vehicle was not free from defective parts or workmanship as set forth above, Tesla would repair or replace the same without cost to Plaintiffs; and

h. Any defects or nonconformities would be cured within a reasonable time.

140. Tesla breached these express warranties in that the Vehicle Defect persists and Tesla refuses to cure it.

141. Plaintiff has given Tesla reasonable opportunities to cure said Defect and make the subject Vehicle fit for its intended purpose, but Tesla has been unable and/or refused to do so within a reasonable time.

142. As a result of said nonconformities, Plaintiff cannot reasonably rely on the Vehicle for the ordinary purpose of safe, reliable, and attractive transportation.

143. As an actual and proximate result of the breach of express warranties, Plaintiff has suffered injury.

**EIGHTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**N.C.G.S. § 25-2-314, ET SEQ. 99.**
**(On behalf of Plaintiffs and the North Carolina Sub-Class)**

144. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

145. 15 U.S.C. § 2308, the Magnuson-Moss Warranty Act, prohibits a supplier from disclaiming implied warranties in the presence of a written warranty.

146. Tesla is a merchant and supplier of vehicles that makes written warranties covering its vehicles.

147. Certain warranties are implied as a matter of law, including inter alia that the Class Vehicles were of fair average quality within the description; that the Class Vehicles were fit for the ordinary purposes for which such goods are used; and that the Class Vehicles would conform to the promises or affirmations of fact made on the advertising stickers, marketing materials, etc.

148.    The Class Vehicles failed to conform with those warranties by virtue of its Autopilot System being defective.

149.    Plaintiffs have given Tesla reasonable opportunity to cure the Defect in nonconformance with these warranties in that Tesla has been made aware, for months, of the Phantom Braking Defect. Tesla has received hundreds of complaints regarding its autopilot system and has refused to remedy the issue, even having been investigated by the NHTSA for such issues.[22]

150.    Tesla has failed to cure the Defect within a reasonable time.

151.    As an actual and proximate result of the Defect, and Tesla's failure to cure it, Plaintiffs and the Class members have suffered injury and incurred damages.

### NINTH CAUSE OF ACTION
**Violation of the North Carolina Unfair Trade Practices Act
N.C.G.S. § 75-1.1, ET SEQ.
(N.C. GEN. STAT. §75-1-1, et seq.)
(On behalf of Plaintiffs and the North Carolina Sub-Class)**

152.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

153.    Tesla is in the business of selling vehicles to consumers.

154.    Tesla violated N.C.G.S. § 75-1.1 by committing the following unfair and deceptive acts and practices:

a. The sale of the Class Vehicles to Plaintiffs under the guise that it was free from defects that would substantially impair the use, safety, or value of the Class Vehicle, which was accompanied by the aggravating factor that Tesla knew of, and consciously failed to

---

[22] Sebastian Blanco, TESLA INVESTIGATED OVER PHANTOM BRAKING-416,000 CARS INVOLVED CAR AND DRIVER (2022), https://www.caranddriver.com/news/a39145925/tesla-phantom-breaking-nhtsa-investigation/ (last visited Jan 7, 2023).

disclose, the existence of the Phantom Braking Defect at the time it marketed and transacted with the class members.

b. The failure of Tesla to honor its warranty, which was accompanied by the aggravating factor that it did so willfully and deceptively for the purpose of reducing its warranty liabilities in lieu of value owed to the consumers, and with the effect of usurping and converting the value Tesla consumers paid for.

c. The affirmative withholding of the consumer's applicable warranty, which was accompanied by the aggravating factor that Tesla consciously avoided producing the warranty as demonstrated by the fruitless wild-goose chase on which Tesla sent Plaintiffs.

d. Tesla misapplying the warranty in fact — a practice distinct from its misrepresentations — which was accompanied by the aggravating factor that it was Tesla's conscious policy to apply its most recent warranty variation to any and all claims, regardless of the consumer and regardless of the warranty purchased.

155. Tesla's acts and practices were in and affecting commerce.

156. Tesla violated the law willfully and knowingly.

157. As an actual and proximate result, Plaintiffs and the members of the Classes suffered injury.

## **PRAYER FOR RELIEF**

158. Plaintiffs, individually and on behalf of all others similarly situated, request the Court to enter judgment against Tesla, as follows:

(a) An order certifying the proposed Class, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

(b) A declaration that Tesla is financially responsible for notifying all Class Members about the defective nature of the Transmission, including the need for periodic maintenance;

(c) An order enjoining Tesla from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Tesla to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Tesla to remove, repair, and/or replace the Class Vehicles' defective Transmission with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Tesla from selling the Class Vehicles with the misleading information; and/or compelling Tesla to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f) Any and all remedies provided pursuant to the causes of action and statutes alleged herein;

(g) A declaration that Tesla must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(h) An award of attorneys' fees and costs, as allowed by law;

(i) An award of pre-judgment and post-judgment interest, as provided by law;

(j) Leave to amend the Complaint to conform to the evidence produced at trial; and

(k) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

159.    Plaintiffs hereby demand a trial by jury of all issues in this action so triable.


This 9th day of January 2023.

*/s/ Blake G. Abbott*
Blake G. Abbott (N.C. State Bar No. 57190)
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: blake@akimlawfirm.com
         pauld@akimlawfirm.com


*Attorneys for Plaintiffs and Proposed Class*